UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

DEBRA DOBBS,

Plaintiff,

-against-

NYU LANGONE MEDICAL CENTER,

Defendant.

------------------------------------------------------------X

COMPLAINT

Docket No.: 18-CV-1285

Jury Trial Demanded

Plaintiff, DEBRA DOBBS, by and through her attorneys, RICOTTA & MARKS, P.C., allege upon knowledge as to herself and her own actions, and upon information and belief as to all other matters, as follows:

## JURISDICTION AND VENUE

1. This is action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et. Seq. ("Title VII"), Age Discrimination in Employment Act of 1967 ("ADEA"), and under the New York Executive Law § 296, the New York City Human Rights Law, and the New York City Administrative Code Title 8, and any other causes of action which can be inferred from the facts set forth herein.

2. The jurisdiction of this Court is invoked under 28 U.S.C. § 1331, the doctrine of pendant jurisdiction and the aforementioned statutory and constitutional provisions.

3. Venue is proper pursuant to 28 U.S.C. § 1391.

4. All conditions precedent to maintaining this action have been fulfilled. A charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") and a

1

notice of right to sue letter was issued on November 28, 2017. This action was properly instituted within ninety (90) days of the receipt of said notice.

## PARTIES

5. At all times hereinafter mentioned, Plaintiff Debra Dobbs ("Dobbs" or "Plaintiff") was and still is a resident of the County of Queens, State of New York. At all relevant times, Dobbs was an "employee" as defined by the aforementioned statutes.

6. Defendant, NYU Langone Medical Center ("NYU" or "Defendant") has its principal place of business at 338 East 38th Street, New York, New York 10016. At all relevant times, NYU has employed over fifty (50) employees and was an employer as defined by all relevant statutes.

## FACTS

7. Dobbs is a sixty-three (63) year old woman who suffers from multiple sclerosis ("MS").

8. Dobbs' disability impacts her ability to walk, talk, hear, and see. As such, MS substantially limits Dobbs in one or more major life activities.

9. On or about July 31, 2000, Dobbs began her employment with Neurology Consultants of New York.

10. On or about August 1, 2013, Neurology Consultants of New York was taken over by, and became an affiliate of NYU Langone Medical Center ("NYU") with NYU becoming Dobbs' employer.

11. From the time of her hire, to the point that NYU took over, Dobbs functioned as a Medical Secretary.

12. In addition, throughout the course of her work, Dobbs functioned as an Office Manager for one of the doctors, Dr. Neophytides, performing various tasks including, but not limited to,

scheduling, billing, pre-certification of patients, banking, and patient contact and communication. She also performed personal tasks for the doctor.

13. Throughout the course of her time working in this capacity, Dobbs performed her job in an exemplary manner.

14. On or about August 1, 2013, after NYU took over the facility, Dobbs' title changed to Faculty Group Practice ("FGP") Secretary II-Intake/Scheduling. In this role, Dobbs continued to perform work directly for Dr. Neophytides, but she also assumed responsibilities for eight other doctors. As such, Dobbs' duties and responsibilities were multifaceted, including, *inter alia*, reception work as well as patient communication, scheduling, and receipt of co-pays, and training new hires.

15. Notwithstanding, Dobbs' change in role, she continued to perform her job in an exemplary manner. This is evidenced by the fact that every year she was employed, Dobbs received a bonus and/or a raise.

16. With respect to co-pays, Dobbs was responsible for receiving them, logging them into the computer, issuing a receipt, and then storing the cash, checks, or credit card receipts in an envelope. At the end of each day, this would be counted and registered, a final accounting printed up, the envelope is sealed, and the totals of the cash and checks is logged on the outside of the envelope. This was the process Dobbs engaged in throughout her employment with NYU.

17. NYU had Dobbs maintain control of the envelope at her reception desk. This was not in a secure or locked location, but was stored in the drawer until it was picked up every Friday.

18. In or around June 2007, Dobbs was diagnosed with MS. This diagnosis was made by Dr. Neophytides, who then referred her to another doctor for treatment. As such, NYU was aware of Dobbs' disability.

19. Joanna Jones ("Jones"), Supervisor/Office Manager, was Dobbs supervisor upon NYU taking over the practice.

20. Jones was also aware of Dobbs' disability as they spoke about it. In fact, Dobbs was open about her disability and the entire office was aware of her diagnosis.

21. On occasion, due to her disability, Dobbs would sometimes suffer sudden medical issues, such as a loss of hearing, which would require her to take a day off and seek medical treatment.

22. Erica Mendez ("Mendez"), a twenty-six (26) year old woman who does not suffer from MS, was hired in May 2016. Dobbs was required to train Mendez and Mendez would work at Dobbs' desk frequently.

23. In or around September 2016, NYU hired a younger (under 40), non-disabled woman to work in the same office as Dobbs. Dobbs was required to train her and teach her the front desk practices.

24. That same month, NYU approached Dobbs and questioned her regarding copayments that they alleged were missing from some of the co-pay envelopes that had been retrieved. More specifically, it was alleged that two envelopes were missing in their entirety, and money was missing from two other envelopes.

25. The two dates for which the envelopes were missing, Dobbs was not working and Mendez was in fact working at the front desk and was responsible for handling the copayments. Nonetheless, Dobbs was blamed.

26. Moreover, for the two other instances, while Dobbs did not properly log the cash and check amounts on the outside of the envelope, the amounts were logged in the computer and on the receipt that was printed out. Thus, it was provable that Dobbs did not take any money notwithstanding her mistake in not logging the amount on the outside of the envelope.

27. Nonetheless, NYU failed to fully and fairly investigate this allegation, instead using it as a basis to terminate Dobbs and replace her with a younger, non-disabled woman who they had Dobbs train.

28. Dobbs' employment was terminated on October 5, 2016. Dobbs was allegedly terminated due to allegations of theft and/or mishandling of co-pay monies. This was patently false. Moreover, there was no evidence to support the finding that Dobbs engaged in this conduct, as there were certain days that she was not even present when the money went missing. Moreover, her younger replacement (Mendez) was present at these times but was not similarly accused, investigated, or terminated for this conduct, even though it was as likely, if not more likely, that she engaged in the theft.

29. In fact, the pretextual nature of Dobbs' termination is further evidenced by the fact that, despite NYU alleging that they determined Dobbs to have stolen, they continued to have her handle and manage copayments up until her termination and had her train her replacement. The truth is that Dobbs was terminated due to her age and disability, and replaced with a younger, non-disabled individual who possessed less experience. This alleged theft was used as a pretext, despite it clearly not being true.

30. On or about January 2, 2017, Dobbs, through her counsel, notified Defendant of their discriminatory conduct and her intent to pursue an action for same.

31. Subsequent to her termination and notifying Respondent of her intent to pursue a claim for discrimination, Dobbs has been subjected to retaliation in that: (1) NYU fought her unemployment benefits application (and lost with the ALJ finding Dobbs engaged in no misconduct); and, (2) Dobbs has received, upon information and belief, negative references that have impacted her ability to secure subsequent employment.

32. Based on the foregoing, Dobbs alleges that Defendant subjected her to unlawful discrimination due to her age, disability, and/or retaliated against her due to her engaging in protected activities in violation of the Americans with Disabilities Act and the Age Discrimination in Employment Act.

33. Plaintiff has been subjected to a adverse employment actions, as well as an atmosphere of adverse employment actions, and/or a hostile work environment based on her disability, age, and/or in retaliation for her opposition to discriminatory practices. Defendant NYU's actions are in violation of the Americans with Disabilities Act, Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000-e, *et seq.;* the New York State Executive Law, the Human Rights Law, §290, *et seq.*; and the New York City Administrative Code § 8-101 *et seq.*

34. By reason of Defendant NYU's violation of Plaintiff's rights, Plaintiff has suffered a loss of monetary benefits associated with her employment, in addition to suffering physical, emotional and other damages.

WHEREFORE, Plaintiff demands judgment against Defendant for all compensatory, emotional, physical, and punitive damages, lost pay, front pay, injunctive relief, and any other damages permitted by law. It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled. Plaintiff demands a trial by jury.

Dated: Long Island City, New York
February 13, 2018

RICOTTA & MARKS, P.C.
*Attorneys for Plaintiff*
37-10 37th Avenue, Suite 401
Long Island City, New York 11101
(347) 464-8694

_____
MATTHEW MARKS