UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DEBRA DOBBS,

                              Plaintiff,

    -v-

NYU LANGONE MEDICAL CENTER,

                             Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/29/2021

No. 18-cv-1285 (MKV)

OPINION AND ORDER
GRANTING
SUMMARY JUDGMENT

MARY KAY VYSKOCIL, District Judge:

      Plaintiff Debra Dobbs brings this action against her former employer, a medical practice owned by a division of New York University, asserting claims for discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), and Title 8 of the New York City Administrative Code ("NYCHRL"). Before the Court is Defendant's motion for summary judgment on all of Plaintiff's claims. Because undisputed evidence establishes that Defendant terminated Plaintiff, and otherwise acted, based on a genuine belief that she stole from the practice and lied about it, Defendant's motion is GRANTED.

                                  I.      BACKGROUND[1]

      In 2000, a neurology practice hired Plaintiff Debra Dobbs as the secretary to Dr. Andreas Neophytides. *See* Def. 56.1 ¶ 3; Pl. 56.1 ¶ 3. In 2007, Plaintiff was diagnosed with multiple

---

[1] The facts are taken from the parties' Local Civil Rule 56.1 statements [ECF #58-1 ("Def. 56.1"), 77 ("Pl. 56.1")], the declarations submitted in connection with those motions and exhibits attached thereto [ECF #65 ("Klein Aff."), 65-4 ("Dobbs Dep."), 66 ("Hernandez Aff."), 67 ("Younas Aff."), 68 ("Neophytides Aff."), 69, 70, 71, 76-1, 82, 83, 84]. Unless otherwise noted, where only one party's 56.1 statement or other submission is cited, the other party does not dispute the fact asserted, has offered no admissible evidence to refute that fact, or merely disagrees with the inferences to be drawn from that fact.

sclerosis ("MS").  Def. 56.1 ¶ 16; Pl. 56.1 ¶ 16.  In 2013, Defendant acquired the neurology practice that employed Plaintiff.[2]  Def. 56.1 ¶ 3; Pl. 56.1 ¶ 3.  Neophytides wished to keep her on, and Defendant hired Plaintiff.  *See* Def. 56.1 ¶¶ 4, 5, 6; Pl. 56.1 ¶¶ 4, 5, 6; Neophytides Aff. ¶ 7; Dobbs Dep. at 44:18–24.  Plaintiff worked for the Faculty Group Practice (the "Practice") of the NYU School of Medicine from August 2013 until she was terminated on October 5, 2016.  Def. 56.1 ¶ 4; Pl. 56.1 ¶ 4.

When Plaintiff started, she was 59 years old.  *See* Def. 56.1 ¶¶ 4, 5, 6; Pl. 56.1 ¶¶ 4, 5, 6; Dobbs Dep. at 44:18–24.  Three other secretaries worked at the Practice, including "Betty Chin, age 52 (now 58)" and "Cheryl Rebancos, age 51 (now 57)," both of whom remain employed at the Practice.  Hernandez Aff. ¶ 6.  Two other secretaries transferred into the Practice during Plaintiff's employment, including "Erica Mendez (now 30)."  *Id.* ¶ 8; *see* Def. 56.1 ¶ 13; Pl. 56.1 ¶ 13.  Mendez started in June 2015 and transferred to another NYU location in August 2016, before Plaintiff was fired.  Hernandez Aff. ¶ 8; Def. 56.1 ¶ 13; Pl. 56.1 ¶ 13.

Plaintiff's duties for the Practice were similar to the duties she had performed for many years for Neophytides, including collecting co-pays from patients.  *See* Def. 56.1 ¶¶ 6, 25, 26; Pl. 56.1 ¶¶ 6, 25, 26; Neophytides Aff. ¶ 8.  In particular, Plaintiff would collect a co-pay, "log" the

---

[2] In her complaint, Plaintiff names "NYU Langone Medical Center" as the defendant in this case [ECF #1 ("Cmpl.") ¶ 10].  However, both sides agree that, in fact, "Plaintiff was employed by NYU School of Medicine, a Division of New York University" ("NYU").  Def. 56.1 ¶ 4; Pl. 56.1 ¶ 4.  Indeed, defense counsel asserts that NYU Langone Medical Center "is not a legal entity capable of being sued."  Def. Mem. at 1 n.1.  It appears that "NYU Langone Medical Center" is merely a "trade name . . . connected to . . . the University."  *Thompson v. Jamaica Hosp. Med. Ctr.*, 2016 WL 4556905, at *5 (S.D.N.Y. Aug. 30, 2016); *see also Sculerati v. New York Univ.*, No. 126439/02, 2003 WL 21262371, at *1 n.1 (N.Y. Sup. Ct. May 16, 2003) ("It is undisputed that NYU Medical Center . . . is the commonly used name of the campus . . . and that NYU School of Medicine . . . is an administrative unit of NYU.").  A plaintiff cannot maintain an action against an entity under a trade name.  *Thompson*, 2016 WL 4556905, at *5; *see also Provosty v. Lydia E. Hall Hosp.*, 91 A.D.2d 658, 659, 457 N.Y.S.2d 106, 108 (2nd Dep't 1982) ("a trade name . . . has no separate jural existence, and . . . can neither sue nor be sued), *aff'd sub nom. Provosty v. Lydia Hall Hosp.*, 59 N.Y.2d 812, 451 N.E.2d 501 (1983).  However, defense counsel has not sought dismissal on that basis.  Rather, it seems "the proper entity, NYU, had notice of the suit" because defense counsel has appeared and argued that Defendant is entitled to summary judgment on Plaintiff's claims.  *Thompson*, 2016 WL 4556905, at *5.  Because the Court grants summary judgment to Defendant, "NYU is deemed by the court to be a party defendant against which the [case] is also dismissed."  *Id.* at *6.

payment into a computer program using her own credentials, and store the cash, check, or credit card receipt in an envelope.  Def. 56.1 ¶¶ 26, 27; Pl. 56.1 ¶¶ 26, 27.  At the end of each day, Plaintiff would print a "final accounting" or "reconciliation" of the "monies [she] collected for the day" and place it in the same envelope, record her name and the total amount in "cash and checks" on the "outside of the envelope," and seal the envelope.  Def. 56.1 ¶¶ 26, 27, 28, 29, 30; Pl. 56.1 ¶¶ 26, 27, 28, 29, 30.  Plaintiff was responsible for the envelopes containing payments from patients she had serviced.  Def. 56.1 ¶ 33; Pl. 56.1 ¶ 33.  The envelopes were kept in a drawer in the area where the secretaries sat until they were picked up at the end of each week.  Def. 56.1 ¶ 34; Pl. 56.1 ¶ 34.

In August 2016, Starr Thompson in "Treasury Operations" emailed Plaintiff about money that was missing from Plaintiff's co-pay collections.  Def. 56.1 ¶ 44; Pl. 56.1 ¶ 44.  More than a week later, Plaintiff responded that she did not know anything about it.  Def. 56.1 ¶ 45; Pl. 56.1 ¶ 45.  After further email exchanges with Plaintiff, Thompson informed Plaintiff's supervisor, Joanna Jones and Teresa Hernandez, "Administrative Manager of the Department of Neurology," about the missing money.  Def. 56.1 ¶ 49; Pl. 56.1 ¶ 49.  Jones immediately admonished Plaintiff for failing to tell Jones that money had gone missing and warned Plaintiff that "further corrective action might be warranted."  Def. 56.1 ¶¶ 60, 61; Pl. 56.1 ¶¶ 60, 61.  Jones issued a similar warning to Rebancos, another secretary who also collected co-pays from patients.  Def. 56.1 ¶ 62; Pl. 56.1 ¶ 62.  At the same time, Hernandez began a month-long investigation into the missing co-pays and shared her findings with another administrator named Haseeb Younas.  Hernandez Aff. ¶ 36; Younas Aff. ¶ 8.

It was ultimately determined that $760 in co-pays was missing for the weeks of July 18, 2016, July 25, 2016, August 1, 2016, and August 8, 2016.  *See* Def. 56.1 ¶¶ 50, 51, 52; Pl. 56.1

¶¶ 50, 51, 52.  Specifically, $580 dollars was missing from Plaintiff's envelopes that were picked up on July 18 and July 25, 2016, including $450 in cash that Plaintiff admits she collected from one of Neophytides' patients.  *See* Def. 56.1 ¶¶ 50, 54, 56, 57; Pl. 56.1 ¶ 50, 54, 56, 57.  There is no dispute that Plaintiff handwrote her name on the outside of the envelopes that were missing money.  Def. 56.1 ¶ 54; Pl. 56.1 ¶ 54.  There is also no dispute that the "reconciliations," which reflected computer accounts of the money collected, were printed out from Plaintiff's computer and showed Plaintiff as the user.  Def. 56.1 ¶ 56; Pl. 56.1 ¶ 56.  Moreover, there is no dispute that the cash amounts were not written on the outside of the envelopes as required.  Def. 56.1 ¶ 55; Pl. 56.1 ¶ 55.  Plaintiff testified at her deposition that she "always" wrote the cash amounts on the outside of her envelopes, except on the very two occasions that her envelopes were missing money.  Def. 56.1 ¶ 59; Pl. 56.1 ¶ 59; Dobbs Dep. 187:9–20.  Plaintiff also admits that she personally sealed the envelopes bearing her name that were collected on July 18 and July 25, 2016.  Def. 56.1 ¶ 58; Pl. 56.1 ¶ 58.

With respect to the rest of the $760, there is no dispute that $180 in cash was missing for the weeks of August 1 and August 8, 2016.  Def. 56.1 ¶ 51; Pl. 56.1 ¶ 51.  Indeed, the envelopes for August 1 and August 8 were missing entirely.  Def. 56.1 ¶ 52; Pl. 56.1 ¶ 56.  Finally, there is no dispute that reconciliations for those dates show Plaintiff as the user who had logged the missing payments.  *See* Def. 56.1 ¶ 56; Pl. 56.1 ¶ 56.

All of the evidence in the record, including Plaintiff's own deposition testimony, supports that Hernandez and Younas believed Plaintiff took the missing co-pays.  *See* Def. 56.1 ¶¶ 64, 78, 79; Dobbs Dep. at 269:16–24 (testifying, "I do believe" that Hernandez and Younas "believed that [Plaintiff was] responsible for the missing co-pays").  Unrebutted evidence shows that Hernandez specifically believed that, although Plaintiff "denied being at work on the days the

4

co-pays went missing," Hernandez's review of "attendance records . . . confirmed" that Plaintiff worked on those days. Hernandez Aff. ¶ 42. On the other hand, Hernandez believed, "Rebancos was on vacation for one of the days in question." *Id*. ¶ 43. Hernandez also concluded that the envelopes that Plaintiff admits she sealed had not been "opened or otherwise tampered with" before Thompson received them and, therefore, the money went missing before Plaintiff sealed the envelopes. *Id*. ¶ 53.

Hernandez and Younas met with Plaintiff at the end of September 2016 to give her an opportunity to respond to their findings. *See* Def. 56.1 ¶ 63; Pl. 56.1 ¶ 63. Soon afterwards, Hernandez and Younas issued a termination notice stating that "[b]ased on [their] investigation," they had "reason to believe [Plaintiff] misappropriated funds totaling $760" [ECF #66-32]. *See* Def. 56.1 ¶¶ 64, 65; Pl. 56.1 ¶¶ 64, 65. Hernandez noted by hand that, rather than providing an explanation, Plaintiff showed a "total disregard for what was presented" at the meeting. Def. 56.1 ¶ 68; Pl. 56.1 ¶ 68.

After she was terminated, Plaintiff requested a grievance hearing, which took place in October 2016. Def. 56.1 ¶¶ 69, 70; Pl. 56.1 ¶¶ 69, 70. Nicole Delts, Assistant Director of Employee & Labor Relations, presided over the hearing. Def. 56.1 ¶¶ 71, 72; Pl. 56.1 ¶¶ 71, 72. Plaintiff argued that someone else must have gone in her drawer, unsealed the envelopes, removed the cash, and placed the envelopes back in the drawer. *See* Def. 56.1 ¶ 72; Pl. 56.1 ¶ 72. Delts, however, concluded that Plaintiff "failed to provide a reasonable explanation as to what occurred" and "failed to take ownership" of her actions. Def. 56.1 ¶ 72; Pl. 56.1 ¶ 72. In a November 2016 letter affirming the decision to terminate Plaintiff [ECF #66-50 ("Delts Letter")], Delts stated that "the reasonable conclusion" was that Plaintiff was "responsible for the missing deposits and misappropriated the funds." Def. 56.1 ¶ 72; Pl. 56.1 ¶ 72.

Plaintiff appealed to the "final step of the grievance process," review by Nancy Sanchez, Senior Vice President and Vice Dean of Human Resources. Def. 56.1 ¶¶ 74, 75; Pl. 56.1 ¶¶ 74, 75. In March 2017, Sanchez, too, issued a letter affirming the decision to terminate Plaintiff. Def. 56.1 ¶¶ 75, 76; Pl. 56.1 ¶¶ 75, 76. Sanchez found that Plaintiff "provided no evidence to support [her] request to overturn [her] termination." Def. 56.1 ¶ 76; Pl. 56.1 ¶ 76.

It is undisputed that Plaintiff never claimed during the investigation into the missing co-pays that she was being discriminated against based on her age or disability. Def. 56.1 ¶ 77; Pl. 56.1 ¶ 77. Indeed, Plaintiff testified that, when she met with Hernandez and Younas, nothing led her to believe the investigation was discriminatory. *See* Dobbs Dep. at 275:12–17. It is also undisputed that Plaintiff never contended during the grievance hearing that she was terminated because of her age or disability. Def. 56.1 ¶ 84; Pl. 56.1 ¶ 84.

Although Plaintiff did not frame it as a matter of discrimination, Plaintiff did argue at the hearing that, in 2014, Rebancos had lost $200 when she took money home to count it but was not disciplined. *See* Delts Letter at 2. Delts responded that the situations were different. She stated that Rebancos "immediately" reported the missing bills and "offered to pay the money out of her personal funds." *Id*.

At her deposition, Plaintiff testified about her belief that Neophytides and another doctor, Dr. Weinberg, wanted to replace her with a younger secretary. *See* Dobbs Dep. at 260:15–261:10. When asked for the basis of that belief, Plaintiff testified only that it was a "fact that they wanted a younger person, someone that they could totally control and pay less" and that she "was treated . . . as the old lady in the office." *Id.* at 260:22–23. Plaintiff also testified that, in 2013 or 2014, she complained to Jones, her supervisor, and to Weinberg that another secretary disparaged Plaintiff in Spanish, including calling her "old and crazy." *Id*. at 278:13–279:6.

6

Plaintiff testified that, in April 2016, she told someone in Employee Relations that she was in a "hostile situation" because "people were talking about [her] in a different language," but she did not mention anything about her age or disability. *Id.* at 113:11–13, 115:12–13 ("she hated me and . . . thought I was lazy"). Plaintiff also testified that she thought Weinberg got "annoyed" if she asked for "a ten minute breather" because of her MS. *Id.* at 263:5, 20–23. Plaintiff filed a charge with the EEOC in July 2017. Def. 56.1 ¶ 90; Pl. 56.1 ¶ 90.

Plaintiff alleges that Mendez, a younger, non-disabled woman replaced her. *See* Cmpl. ¶¶ 22, 26. However, it is undisputed that Mendez transferred out of the Practice before Plaintiff was fired. *See* Def. 56.1 ¶ 13; Pl. 56.1 ¶ 13. Both sides agree that, after Plaintiff was fired, she applied for unemployment benefits, and Defendant opposed her application. *See* Def. 56.1 ¶ 83; Pl. 56.1 ¶ 83; Def. Mem. 24; Pl. Mem. at 8. Plaintiff also alleges that she was a given negative reference, which Defendant denies. *See* Cmpl. ¶ 31; Def. Mem. 25. Plaintiff testified that a friend of Neophytides offered her a job, said he would check her references, and then decided not to hire her. Dobbs Dep. at 22:25, 23:10–17. There is no dispute that Plaintiff was later hired by two other practices. Def. 56.1 ¶¶ 87, 88; Pl. 56.1 ¶¶ 87, 88.

Plaintiff initiated this action by filing a complaint [ECF #1 ("Cmpl.")]. In the complaint, she alleges that Defendant "subjected her to unlawful discrimination due to her age" and "disability" and "retaliated against her." Cmpl. ¶ 32. She cites the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and Title 8 of the New York City Administrative Code ("NYCHRL"). *Id.* ¶ 33. Defendant moves for summary judgment on all of Plaintiff's claims [ECF #63], and Plaintiff opposes that motion [ECF #76].

II.     LEGAL STANDARDS

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To raise a genuine dispute, the party opposing summary judgment cannot merely show that there is "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Rather, she must provide "hard evidence" of an issue for trial. *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). "Conclusory allegations, conjecture, and speculation" are insufficient. *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). A "mere . . . scintilla of evidence in support of the [non-moving party's] position" is also "insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A court may not "weigh evidence" or make "credibility assessments" and must "draw all reasonable inferences" in favor of the non-moving party. *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). "However, in determining what may reasonably be inferred" from evidence in the record, a court should not afford the party opposing summary judgment "the benefit of unreasonable inferences, or inferences at war with undisputed facts." *Cty. of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1318 (2d Cir. 1990) (internal citation omitted); *see Apex Oil Co. v. Di Mauro*, 822 F.2d 246, 252 (2d Cir. 1987).

III.    DISCUSSION

All of Plaintiff's claims are evaluated under the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010); *Cuttler v. Fried*, 2012 WL 1003511, at *6 (S.D.N.Y. Mar. 23, 2012) (discussing claims under the ADA, ADEA, NYSHRL, and NYCHRL). To

survive a motion for summary judgment, a plaintiff must carry her initial burden to establish a *prima facie* case of discrimination or retaliation.  *See Kho v. New York & Presbyterian Hosp.*, 344 F. Supp. 3d 705, 717 (S.D.N.Y. 2018).  The burden then shifts to the employer to offer evidence of a "legitimate, nondiscriminatory reason" for the adverse action.  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015).  *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802).  If the employer offers such evidence, "the burden shifts back to the plaintiff" to offer evidence "that the employer's reason 'was in fact pretext.'"  *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 804).

To establish a *prima facie* case of age discrimination, a plaintiff must show that (1) she is a member of the protected age group; (2) she was qualified for the position; (3) she suffered an adverse action (*i.e.*, here, she was discharged); and (4) the adverse action occurred under circumstances giving rise to an inference of age discrimination.  *Sutera v. Schering Corp.*, 73 F.3d 13 (2d Cir. 1995).  ADEA claims have been held to be identical to age discrimination claims under the NYSHRL.  *Gorzynski*, 596 F.3d at 105 n.6.  Thus, the analysis is the same for both the federal and New York State law claims.  *Id.*

To establish a *prima facie* case of disability discrimination under the ADA or NYSHRL, a plaintiff must show that (1) the defendant is a covered employer; (2) the plaintiff suffered from, or was regarded as suffering from, a disability within the meaning of the statute; (3) the plaintiff was qualified to perform the essential functions of the job, with or without a reasonable accommodation; and (4) she suffered an adverse employment action because of her disability or perceived disability.  *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71 (2d Cir. 2019); *Jacobs v. New York City Dep't of Educ.*, 768 F. App'x 86, 87 (2d Cir. 2019).

To establish a *prima facie* case of retaliation under Title VII and under the NYSHRL, an employee must show that: "(1) [s]he was engaged in an activity protected under Title VII; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer." G*ordon v. New York City Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000) (quoting *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993)).

For the federal and state law claims, Plaintiff's age, disability, or protected activity must be the "but for" cause of her termination. *See Gross v. FBL Fin. Servs.*, 557 U.S. 167, 180 (2009); *Natofsky v. City of New York*, 921 F.3d 337, 348-49 (2d Cir. 2019); *Wolf v. Time Warner, Inc.*, 548 F. App'x 693, 695 (2d Cir. 2013) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). The standard for the NYCHRL is different. Under that statute, age and disability need only be a motivating factor. *See Velazco v. Columbus Citizens Found.*, 778 F.3d 409, 411 (2d Cir. 2015) (citing *Bennett v. Health Mgmt. Sys., Inc.*, 936 N.Y.S.2d 112, 120 (1st Dep't 2011)); *Watson v. Emblem Health Servs.*, 158 A.D.3d 179, 182 (1st Dep't 2018). For a claim of retaliation under the NYCHRL, the plaintiff must establish that she took an action opposing her employer's discrimination "and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013); *see Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 71, 872 N.Y.S.2d 27, 33–34 (1st Dep't 2009).

Defendant first argues that Plaintiff cannot establish a *prima facie* case for her age and disability discrimination claims. For example, with respect to age discrimination, Defendant stresses that Plaintiff offers evidence of only her own, subjective beliefs that Neophytides and

10

Weinberg wanted to replace her with someone younger and treated her as an "old lady." *See* Dobbs Dep. at 260:15–261:10; *Pustilnik v. Battery Park City Auth.*, 2019 WL 6498711, at *8 (S.D.N.Y. Dec. 3, 2019) (subjective beliefs do not support a claim of discrimination). Defendant also stresses that Plaintiff was 59 when it hired her. *See Spires v. MetLife Grp., Inc.*, 2019 WL 4464393, at *8 (S.D.N.Y. Sept. 18, 2019) ("Although the ADEA does not necessarily foreclose an age-discrimination claim when a plaintiff was over forty years old when first hired, this substantially weakens any inference of discrimination") (collecting cases). Defendant notes that other secretaries, two of whom are still employed at the Practice, are similar ages to Plaintiff. *See* Def. 56.1 ¶ 5; Pl. 56.1 ¶ 5; Hernandez Aff. ¶ 6. With respect to disability discrimination, Defendant argues that nobody involved in the decision to terminate Plaintiff knew she had MS. Def. Mem. at 22; Pl. Opp. at 2.

These arguments are persuasive but, ultimately, immaterial. Defendant is clearly entitled to summary judgment on Plaintiff's age and disability discrimination claims because, even assuming Plaintiff could establish a *prima facie* case, Defendant has offered unrebutted evidence of a legitimate, non-discriminatory reason for firing Plaintiff. Namely, Defendant concluded, based on an investigation, that Plaintiff stole from the Practice. Plaintiff has failed to offer any evidence from which the Court could infer that this reason was pretext.

Theft is a legitimate, non-discriminatory reason to fire someone. *See Gorley v. Metro-N. Commuter R.R.*, 2000 WL 1876909, at *6 (S.D.N.Y. Dec. 22, 2000), *aff'd* 29 F. App'x 764 (2d Cir. 2002). Defendant offers ample, undisputed evidence that Plaintiff was responsible for the missing co-pays. For example, it is undisputed that Plaintiff handwrote her name on the outside of envelopes that were missing money, that the relevant reconciliations were done on Plaintiff's

computer, using her credentials, and that Plaintiff personally sealed the envelopes. *See* Def. 56.1 ¶¶ 54, 56, 57, 58; Pl. 56.1 ¶¶ 54, 56, 57, 58.

Plaintiff asserts that Mendez could have logged in to Plaintiff's computer and that anyone could have accessed the envelopes with the money in them. Pl. Opp. at 6. These arguments fail for three reasons. First, the speculation that Mendez actually collected and logged into the computer system the co-pays that went missing contradicts Plaintiff's admission that she personally collected a $450 cash payment that went missing. *See* Def. 56.1 ¶ 57; Pl. 56.1 ¶ 57. While the Court must draw "reasonable inferences" in Plaintiff's favor, it cannot afford Plaintiff "the benefit of unreasonable inferences, or inferences at war with undisputed facts." *Cty. of Suffolk*, 907 F.2d at 1318. Second, Plaintiff cannot raise a genuine dispute merely by offering "some metaphysical doubt" about the facts. *Matsushita*, 475 U.S. at 586–87. Third, and most important, it does not matter if Defendant was correct in its conclusion that Plaintiff took the money. It matters only that Defendant's conclusion that Plaintiff took the money, rather than unlawful discrimination, was the reason for her termination. *See* T*oussaint v. NY Dialysis Servs.*, 706 F. App'x 44, 45- 46 (2d Cir. 2017) (courts are "not interested in the truth of the allegations against [the] plaintiff" but rather "in what motivated the employer"); *Borzon v. Green*, 778 F. App'x 16, 19 (2d Cir. 2019) (a court is not "a super-personnel department"); *Kolesnikow v. Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98, 111 (S.D.N.Y. 2009) (when an employee is fired for misconduct, it does not matter if the employer was correct, only if it had a good-faith basis for its conclusion that plaintiff was at fault).

Plaintiff admits that Hernandez and Younas, who made the initial decision to terminate her, believed Plaintiff took the missing co-pays. *See* Def. 56.1 ¶¶ 64, 78, 79; Dobbs Dep. at 269:16–24. Moreover, Plaintiff offers no evidence to support the contention that, at any stage of

the termination and grievance process, the conclusion that Plaintiff took the money was a pretext for discrimination.  Plaintiff argues that Rebancos—who was in the same protected category with respect to age, *see* Hernandez Aff. ¶ 6, but was not disabled—was not terminated when, in 2014, cash was missing from her co-pay collection.  Pl. Opp. at 7.  However, Defendant offers evidence that it believed the situations were different.  Specifically, in her letter affirming the decision to terminate Plaintiff, Delts explained that Rebancos "immediately" reported that she lost track of the money, while Plaintiff failed to inform her supervisor that co-pays were missing, never offered a reasonable explanation for how they went missing, and never took accountability for her actions.  *See* Delts Letter at 2.  Accordingly, because Plaintiff cannot show pretext, the Court grants Defendant's motion for summary judgment on Plaintiffs claims of discrimination based on age and disability.

Plaintiff's retaliation claim is even weaker than her discrimination claims.  Plaintiff first alleges that Defendant retaliated against her by opposing her application for unemployment benefits.  Defendant does not dispute that it opposed her application.  *See* Def. 56.1 ¶ 83; Pl. 56.1 ¶ 83; Def. Mem. 24; Pl. Mem. at 8.  However, when an employee is terminated for wrongdoing, an employer's challenge to unemployment benefits does not support a claim of retaliation. *Bright-Asante v. Saks & Co.*, 242 F. Supp. 3d 229, 244 (S.D.N.Y. 2017).  Plaintiff also speculates that she was a given negative reference, since a doctor who initially offered her a job changed his mind after telling her that he intended to check her references.  Dobbs Dep. at 22:25, 23:10–17.  Assuming, *arguendo*, that this could be a basis for a retaliation claim, however, Plaintiff offers no "hard evidence" that she was ever given a negative reference, *D'Amico*, 132 F.3d at 149, and it is undisputed that two other doctors later hired Plaintiff.  Def. 56.1 ¶¶ 87, 88; Pl. 56.1 ¶¶ 87, 88.  Plaintiff cannot even meet the forgiving standard of the NYCHRL, since she

has not offered evidence that Defendant acted "as a result" of some activity she took to oppose its discrimination. *Mihalik*, 715 F.3d at 112. Accordingly, the Court grants Defendant summary judgment on Plaintiff's retaliation claim.

## IV.   CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment [ECF #63] is GRANTED. The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

Date: **March 29, 2021**     **MARY KAY VYSKOCIL**
New York, NY                 **United States District Judge**

14